**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE<br>COMPANY OF PITTSBURGH, PA, | ) ) | |
| | ) | |
| and | ) | |
| | ) | |
| NEW HAMPSHIRE INSURANCE<br>COMPANY, | ) ) | |
| | ) | |
|       Plaintiffs, | ) | No. 1:17-cv-1329 |
| | ) | |
| v. | ) | |
| | ) | |
| SOUTHERN COAL CORPORATION, | ) | |
| | ) | |
| Serve: CT Corporation System | ) | |
| 5400 D Big Tyler Road | ) | |
| Charleston, WV 25313 | ) | |
| | ) | |
| | ) | |
|       Defendant. | ) | |

## COMPLAINT

Plaintiffs National Union Fire Insurance Company of Pittsburgh, PA ("National Union")

and New Hampshire Insurance Company ("NHIC") (collectively, "Plaintiffs") allege the

following against Defendant Southern Coal Corporation ("Southern Coal"):

## PARTIES

1.      National Union is an insurance company duly organized and authorized to

transact insurance business under the laws of the state of Pennsylvania, in good standing, with its

principal place of business located at 175 Water Street, 18th Floor, New York, NY 10038.

2.      NHIC is an insurance company duly organized and authorized to transact

insurance business under the laws of the state of Illinois, in good standing, with its principal

place of business located at 175 Water Street, 18th Floor, New York, NY 10038.

3.      Southern Coal, at all times relevant to this matter, is a Delaware corporation registered to conduct business in West Virginia, with its principal place of business located at 216 Lake Drive, Daniels, WV 25832 and a local office address listed at 818 Eisenhower Drive, Beckley, WV 25801.  Southern Coal can be served through CT Corporation System at 5400 D Big Tyler Road, Charleston, WV 25313.

## JURISDICTION AND VENUE

4.      Plaintiffs incorporate each of the preceding allegations as if fully restated herein.

5.      This Court is vested with jurisdiction pursuant to 28 U.S.C. § 1332 because National Union is a citizen of Pennsylvania/New York, NHIC is a citizen of Illinois/New York, and Southern Coal is a citizen of Delaware/West Virginia; as set forth below and incorporated herein, the amount in controversy exceeds $75,000, exclusive of costs and interest.

6.      This action properly lies in the Southern District of New York, pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district; specifically, the underlying promissory note, defined and fully discussed below and incorporated herein, contains a valid forum-selection/consent-to-jurisdiction clause allowing all judicial proceedings against Southern Coal arising out of the note to be brought before this Court.

## FACTUAL ALLEGATIONS

7.      Plaintiffs incorporate each of the preceding allegations as if fully restated herein.

8.      Founded in 2007, Southern Coal owns and operates coking coal production mines; upon information and belief, it operates 33 coal mines with a production capacity of 7.2 million tons of coal; Southern Coal is also the parent company of various coal assets, including A&G Coal Corp., Sequoia Energy, LLC, Premium Coal Co. Inc., and Tams Management, Inc.

- 2 -

**I.      SOUTHERN COAL'S DEFAULT**

      **A.      <u>Payment Owed Under Policies Issued to Southern Coal.</u>**

      9.      Between 2009 and 2010, Southern Coal sought contracts for workers'

compensation and general liability insurance coverage from Plaintiffs.

      10.      Beginning on or about July 1, 2009, Plaintiffs issued various workers'

compensation insurance policies to Southern Coal, which are fully described in the following

table (collectively "the Policies"):

| Contract No. | Associated Policies | Policy Period |
|---|---|---|
| 831175 | WC 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 | 7/1/09-7/1/10 |
| 831176 | WC 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<br>WC 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 | 7/1/10-7/1/11 |
| 831177 | WC 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<br>GL 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<br>WC 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 | 7/1/11-7/1/12 |
| 831178 | | 7/1/12-7/1/13 |
| 831179 | WC 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<br>WC 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<br>WC 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<br>GL 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 | 7/1/13-7/1/14 |

      11.      The policy documents and all endorsements and schedules issued to Southern

Coal at the inception of each coverage period—all of which are incorporated herein—are

insurance contracts between Southern Coal and Plaintiffs.

      12.      Throughout the coverage periods, Plaintiffs provided to Southern Coal insurance

coverage for any covered loss that occurred regarding endorsed aspects of Southern Coal's

business.

      13.      Pursuant to the Policies, Southern Coal had a duty to pay insurance premiums as

compensation to Plaintiffs for the insurance coverage provided for the policy periods (the

"Policy Periods").

14.    Plaintiffs, pursuant to the policy language, received estimated premium payments from Southern Coal and made the final premium determinations pursuant to post-policy audits and adjustments of Southern Coal's operations, books, records, and documents.

15.    At the inception of each Policy Period, Plaintiffs calculated an estimated premium pursuant to the terms and conditions of each policy.

16.    Plaintiffs calculated the estimated premium based upon documents and information provided by Southern Coal.

17.    Southern Coal received and accepted the insurance coverage for the Policies, *i.e.*, Workers Compensation, General Liability, and Commercial Auto Liability Policies, which required Southern Coal to pay all premium due and owing.

18.    Plaintiffs fully performed all conditions required of them in connection with providing the insurance coverage under the Policies, as specifically requested by Southern Coal.

**B.    The Southern Coal Audits.**

19.    Pursuant to the Policies, Plaintiffs conducted audits of Southern Coal's books and records related to the respective Policies.

20.    After applicable adjustments, and accounting for all payments made by Southern Coal, Plaintiffs determined that Southern Coal owed remaining premium of $569,092, approximately $9,800 of which is owed under policies exclusive of the Promissory Note (the "Outstanding Premium").

21.    Plaintiffs have issued invoices/notices to Southern Coal for the Outstanding Premium, but Southern Coal has failed and refused to remit payment.

3906898

C.      **The Southern Coal Promissory Note.**

22.     Acknowledging its debt owed for the Outstanding Premium, on or about March 19, 2014, Southern Coal, via its Vice President of Operations, Stephen W. Ball, executed a Promissory Note ("Note") in favor of National Union.[1]

23.     The Note encompasses amounts owed by Southern Coal on Contract 831177, which covers the July 1, 2011 to July 1, 2012 policy period.

24.     Pursuant to the Note, Southern Coal agreed to pay the amount set forth in "Annex A" to the Note, via installment payments totaling $2,701,263.

25.     Under the Note's express terms, a default in payment of principal or interest when due and payable by Southern Coal shall constitute an "Event of Default."

26.     Upon any "Event of Default," the entire unpaid principal and interest would "without notice, become immediately due and payable."[2]

27.     The Note also provides that, upon an Event of Default, National Union, as the Payee and holder of the Note, could secure all rights and remedies available at law and equity.[3]

28.     The Note further provides that, upon an Event of Default, National Union could take action to recover all costs and expenses, including reasonable attorneys' fees, incurred in enforcing Southern Coal's obligations under the Note.[4]

29.     The Note further provides that "[a]ll judicial proceedings brought against [Southern Coal] arising out of or relating to [the] Note may be brought in any . . . federal court of competent jurisdiction in the State of New York, and . . . [Southern Coal] accepts . . . , generally

---

[1]     A true and accurate copy of the Promissory Note, dated March 19, 2014, is attached hereto as **Exhibit A** and is incorporated by reference.

[2]     **Exhibit A** at 2.

[3]     *Id.*

[4]     *Id.*

and unconditionally, the nonexclusive jurisdiction of the aforesaid courts and waives any defense of forum non conveniens and irrevocably agrees to be bound by any judgment rendered thereby in connection with [the] Note."[5]

30.     Further, after any Event of Default, Southern Coal agreed that the interest would continue to accrue at a rate of the lesser of 12% per annum, or at the maximum lawful rate.[6]

## COUNT I
## BREACH OF PROMISSORY NOTE

31.     Plaintiffs incorporate each of the preceding allegations as if fully restated herein.

32.     National Union, as holder of the Note, has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Note.

33.      Southern Coal failed to make payments to National Union as required under the Note, breaching its obligations and triggering an "Event of Default" as defined therein.

34.     As a result of Southern Coal's failure to make payments to National Union under the Note, National Union has sustained damages equal to a balance of not less than $559,286, plus attorneys' fees, late fees, interest and collection costs, as specified in the Note and as available under applicable law.

35.     After accounting for payments, credits, and all lawful setoffs, Southern Coal owes National Union a balance of not less than $559,286.

36.     Despite multiple demands for payment by National Union, Southern Coal has refused to remit payment for the amount due and owing.

---

[5]     *Id.* at 3.

[6]     *Id.* at 1.

3906898

37.     All conditions precedent to Southern Coal's performance in making payment under the Note have been satisfied by National Union.

38.     As Southern Coal continues breach the Note, and as each failure to pay constitutes an "Event of Default" under the terms of the Note, National Union seeks to enforce its contractual rights and remedies under the Note.

WHEREFORE, Plaintiff National Union respectfully requests that this Court enters judgment against Southern Coal in the amount of $559,286, plus attorneys' fees, costs, expenses, prejudgment and post-judgment interest, and such other and further legal and equitable relief that this Court deems proper.

## COUNT II
## QUANTUM MERUIT/UNJUST ENRICHMENT

39.     Plaintiffs incorporate each of the preceding allegations as if fully restated herein.

40.     In the alternative to Plaintiffs' breach of contract causes of action, Plaintiffs are entitled to recover under a theory of Quantum Meruit/Unjust Enrichment.

41.     Plaintiffs, acting in good faith, conferred a benefit by providing Southern Coal with assurances that Plaintiffs would:

a.      Cover Southern Coal employees up to a certain amount for bodily injury by accident, disease, or death that occurred by the conditions of employment with Southern Coal between January 31, 2010 through January 31, 2013; and

b.      Provide general liability coverage to Southern Coal for claims of damage and injury incurred between January 31, 2010 through January 31, 2013.

42.     Plaintiffs would not have conferred these benefits, but for their expectation of compensation.

3906898

43.     Southern Coal was aware of, and voluntarily accepted and retained, the benefits provided by Plaintiffs.

44.     Southern Coal was enriched by the benefits provided by Plaintiffs at Plaintiffs' expense.

45.     It would be unjust and inequitable for Southern Coal to receive the benefits conferred without compensating Plaintiffs.

46.     The dollar value of the benefits conferred by Plaintiffs is $559,286.

47.     Pursuant to the relevant invoice, Southern Coal knew that Plaintiffs expected to be compensated for the coverage provided by Plaintiffs.

48.     Upon demand, Southern Coal has failed to pay Plaintiffs for the reasonable value of the services provided, which totals at least $559,286.

49.     Southern Coal has been unjustly enriched by benefiting from the services provided by Plaintiffs, and equity and good conscience require Plaintiffs be compensated for the value of those services.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Southern Coal in the amount of $559,286, plus costs, expenses, prejudgment and post-judgment interest, and such other and further legal and equitable relief that this Court deems proper.

3906898

Dated:  February 22, 2017                         Respectfully submitted,

                                                  NATIONAL UNION FIRE INSURANCE
                                                  COMPANY OF PITTSBURGH, PA and
                                                  NEW HAMPSHIRE INSURANCE COMPANY

                                                  By:   /s/ *Gretchen D. Kaplan*
                                                        One of Their Attorneys

Richard F. Shearer                                Gretchen D. Kaplan (#GA8225)
(*pro hac vice* forthcoming)                      SHOOK, HARDY & BACON L.L.P.
SHOOK, HARDY & BACON L.L.P.                       111 South Wacker Drive, Suite 5100
2555 Grand Boulevard                              Chicago, IL 60606
Kansas City, MO 64108                             Telephone:  (312) 704-7700
Telephone:  (816) 474-6550                        Facsimile:  (312) 558-1195
Facsimile:  (816) 421-5547                        Email:  gkaplan@shb.com
Email:  rshearer@shb.com

3906898